UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PULSE ELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.D. ELECTRONIC CORP., <br><br> Defendant. | Case No.: 18cv0373-BEN (DEB) <br><br> **CLAIM CONSTRUCTION ORDER** |

This litigation involves alleged patent infringement. Pulse Electronics, Inc. ("Pulse"), alleges U.D. Electronic Corp. ("UDE") has infringed on three U.S. Patents belonging to Pulse. According to the Complaint, UDE manufactures and sells electronic RJ-45 jacks in configurations that infringe Pulse's patents. The parties have identified seven terms from the three patents-in-suit for construction. The parties submitted proposed claim construction briefs, and on July 16, 2020, the Court held a claim construction hearing. The patents and claim terms are construed in the same order presented and briefed by the parties. The disputed terms are:

1. Retention element ('840 Patent, Claims 1 and 10);
2. Insertable lead terminal(s) ('840 Patent, Claims 1, 10 and 16);
3. Means for securing the lead terminals within the lead channels, other than molding said lead terminals into said base body ('840 Patent, Claim 16);
4. Outer periphery ('473 Patent, Claims 1, 37, 39, and 41);
5. Optical isolation element ('473 Patent, Claims 18 and 33);
6. Interfaces ('318 Patent, Claims 14 and 17); and

1

7. Internal printed circuit board ('318 Patent, Claim 14).

The Court construes the terms as follows:

The first three terms come from U.S. Patent No. 6,593,840, which describes an invention to connect electronic components. It is a rectangular device with multiple electrical leads sitting in lead channels.

> **1. "Retention element."  The Court construes this term to mean, *"a retainer of one or more lead terminals that prevents movement of the lead terminal(s) away from a base structure."***

The term is found in claims 1 and 10. Pulse proposes this construction: "a structure that retains one or more lead terminals to prevent movement of the one or more lead terminals away from a base structure and normal or substantially normal to the direction of insertion of the lead terminal." This proposed construction is complicated, ambiguous, and includes a phrase that is likely foreign to a jury ("normal or substantially normal to the direction of…"). Alternatively, UDE proposes, "an element that captures and maintains a lead terminal within the lead terminals by friction."

This makes some sense in view of drawings 8 and 9 and element 160. Element 160 is described in the specifications as "a retainer" with lateral projections 162 "which help capture and retain the lead terminals 102 within the lead channels." See specifications 5:30-42. UDE argues that friction is necessary. Pulse argues that no friction is required because the patent says that retention can be achieved by bonding, and therefore adopting a friction limitation would be error because one may not import a limitation from the specifications.

The larger context is that the specification is always highly relevant to claim construction and the line between the two principles – reading claims in view of the specification and not importing a limitation from the specification – blurs. As the Federal Circuit explained recently,

> the claims do not stand alone. They are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims, and must therefore be read in view of the specification. Accordingly, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.

*Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 796 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 648 (2019) (internal quotations and citations omitted). The court acknowledged, however, "the difficulty in drawing the 'fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims.'" *Id.* at 797.

While Pulse also argues correctly that the Patent Trial and Appeal Board rejected a friction limitation, that decision is not dispositive or controlling, nor is it particularly persuasive. *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, No. CV 14-1430-LPS-CJB, 2020 WL 1850657, at *4 (D. Del. Apr. 13, 2020) (quoting *SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016) ("[T]he Board applies the broadest reasonable construction of the claims while the district courts apply a different standard of claim construction as explored in *Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)."). Nonetheless, reading the claim in view of the specification, including friction in the construction is too limiting in that it excludes bonding. Accordingly, the Court construes "retention element" as stated above without a "friction" limitation.

Finally, UDE alternatively proposes a means-plus-function analysis. That analysis is not applicable here. Significantly, the word "means" is not used in this claim. When "means" is not used, there is a rebuttable presumption against means-plus-function. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). The presumption can be overcome, but this is not the claim to do so. "When a claim term lacks the word 'means,' the presumption can be overcome and § 112, para.

6 will apply if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (citations omitted).  Here, the '840 Patent recites a sufficiently definite structure for the retention element.  Consequently, the presumption applies and a means-plus-function construction is not appropriate.

> **2. "Insertable lead terminal(s)."  The Court gives this term its plain and ordinary meaning to one ordinarily skilled in the art.**

This term is found in claims 1, 10, and 16.  Pulse proposes the term be given its plain and ordinary meaning.  UDE disagrees and proposes a construction including the phrase "…substantially U-shaped portion that corresponds to a shape of the lead channel…"

It is true that the drawings of the invention show a U-shape or a double U-shape lead in the lead channel.  *See* figure 6 element 102; figure 9 element 102; figure 10B element 201.  The specifications describe one embodiment of the 102 lead terminals as having a clip-like portion with a counter bend with the bend providing some spring and friction to help frustrate the removal of the lead terminal from the base.  Col. 4:37-58.  On the other hand, the specifications claim that alternative shapes can be used for the lead terminals such as a "circular or oval cross-section."  Col. 6:1-6.  As noted by the court in *Continental Circuits*, the specification "is the single best guide to the meaning of a disputed term."  915 F.3d at 796; *see also, Rembrandt Diagnostics, LP v. Alere, Inc.*, No. 2019-1595, 2020 WL 1815748, at *4 (Fed. Cir. Apr. 10, 2020) (reversing claim construction and relying on *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005)).

Pulse separately argues the doctrine of claim differentiation.  Pulse says that claims 1, 10, and 16 do not mention a U-shape, but claims 3 and 15 do recite a U-shape.  So, Pulse argues, 3 and 15 must be different from 1, 10, and 16.  Opening Brief at 10-11.  Pulse is partly right and partly wrong.  Claim differentiation applies best with a main claim and a dependent claim.  "In the most specific sense, 'claim differentiation' refers to

the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim. Thus, the claim differentiation tool works best in the relationship between independent and dependent claims." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) (citations omitted). Here, claim 3 depends on claim 1, so the doctrine applies, meaning that claim 3 is more limited (limited by the U-shape) than claim 1. In other words, the doctrine of claim differentiation lends support for construing the term according to its plain and ordinary meaning.

Claim 15 is an independent claim, however. Independent claims may describe the same invention using different terms. "[C]laim drafters can also use different terms to define the exact same subject matter. Indeed, this court has acknowledged that two claims with different terminology can define the exact same subject matter. In this context, this court has cautioned that 'claim differentiation is a guide, not a rigid rule.'" *Id.* at 1380–81 (citations omitted). Here, the doctrine of claim differentiation permits the notion that independent claims 1, 10, and 16 describe the same subject matter as independent claim 15, even though only claim 15 specifies a U-shape. As a result, it appears that one could construe claims 10 and 16 as including the U-shape limitation similar to independent claim 15 without offending the doctrine of claim differentiation. This reading, while supportable, is more strained. In the end, the better construction is the construction more easily understood by the jury.

> **3. "Means for securing the lead terminals within the lead channels, other than molding said lead terminals into said base body." The Court finds this is to be construed in a means-plus-function format where the corresponding structure is the combination of retainer 160 and its T-shaped wings 162 (in figure 8) and the lead terminal 102 having a clip-like portion 134 (in figure 9).**

This phrase is found in claim 16. Both parties agree that the element is drafted in a means-plus-function format. The parties disagree, however, over the corresponding

5

structure. Identifying the corresponding structure is the second step in means-plus-function analysis. "Means-plus-function claiming occurs when a claim term is drafted in a manner that invokes 35 U.S.C. § 112, para. 6, which states: An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Williamson*, 792 F.3d at 1347–48 (citation omitted). "Construing a means-plus-function claim term is a two-step process. The court must first identify the claimed function. Then, the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (citation omitted).

Pulse argues that the corresponding structure is the wall member 152. But that argument has problems. Wall member 152 appears only on figures 8 and 9. The figures identified as item 152 appear to be different structures. On figure 9, structure 152 appears to be a lead in one place and in another place 152 appears to be a clip. On figure 8, structure 152 looks neither like a lead, nor a clip, but like a base body cutaway. If 152 refers to three different structures, it would render the mean-plus-function claim term indefinite. Instead, UDE's proposal makes sense. UDE offers that the corresponding structure is the combination of retainer 160 and its T-shaped wings 162 (in figure 8) and the lead terminal 102 having a clip-like portion 134 (in figure 9). This is evident from the drawings and agrees with the specifications at Col. 5:11-59. Accordingly, reading the claim in view of the specification, the corresponding structure for this phrase is the combination of retainer 160 and its T-shaped wings 162 (in figure 8) and the lead terminal 102 having a clip-like portion 134 (in figure 9).

The fourth and fifth terms come from U.S. Patent No. 7,959,473, which claims an invention of a modular plug connector assembly incorporating an insert assembly. The connector can be configured for different standards such as the Gigabit Ethernet standard, the 10/100 standard, or with a plurality of light sources (*e.g.,* LEDs).

**4. "Outer periphery."  The Court gives this term its plain and ordinary meaning to one ordinarily skilled in the art.**

This term is found in claims 1, 37, 39, and 41.  Pulse proposes the term be construed as "the external-most perimeter of a surface of the mated pairs of insert body elements."  The proposal substitutes a redundant claim term (outer periphery) with more redundancy (external-most perimeter).  Pulse's construction confuses rather than construes.   UDE proposes "external boundary."  But this construction also offers redundancy without clarity and is no better than the original claim language.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.  In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies."  *Ivera Med. Corp. v. Excelsior Med. Corp.*, No. 11-cv-1115-H (RBB), 2013 WL 12205723, at *3 (S.D. Cal. Oct. 2, 2013) (citations omitted).  That is the case here.

**5. "Optical isolation element."  The Court construes this term to mean, "an element that substantially isolates light."**

This term is found in claims 18 and 33.  Pulse proposes to construe the term as an "apparatus that blocks a portion of the light emanating from a source from an undesired area."  That proposed construction injects ambiguity into the claim term as there is no guiding principle as to what is or is not desirable.  UDE proposes that this is drafted in means-plus-function format, without identifying a corresponding structure as required at step two of means-plus-function analysis.  One could argue that the term "element" in "optical isolation element" does not connote any particular structure.  It could be argued that it is a nonce word like the term module, mechanism or device.  *E.g., Williamson*, 792 F.3d at 1350 (quoting *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006)).  Nevertheless, the specifications and the drawings offer enough definition of structure for isolating light in a modular plug connector to permit the construction the Court has identified.

The sixth and seventh terms come from U.S. Patent No. 9,178,318, which describes an invention of an electrically shielded integrated connector module.

### 6. "Interfaces." The Court construes this term to mean, "forms a direct or indirect connection."

This term is found in claims 14 and 17. Pulse proposes that the term be construed to mean "forms a direct or indirect electrical connection." Pulse indicates that it is important that the interface be understood to provide indirect and direct electrical connection. UDE proposes the term be construed to mean "contacts a shared boundary." Claim 14 simply describes a body shield that "interfaces with the internal printed circuit board" to improve electrical isolation. Col. 16:30-33. It continues by describing a shielding tab configured to provide "electrical connectivity between the internal printed circuit board and the body shield." Col. 16:35-38. A tab suggests an electrical connection, but does not foreclose a non-electrical connection, between body shield and circuit board. Col. 7:19-46. The constructions proposed by both parties add confusion and limitations that are absent from the claim, specifications, and drawings. The Court's construction will better assist the jury.

### 7. "Internal printed circuit board." The Court construes this term to mean, "printed circuit board comprising part of an insert body."

This term is found in claim 14. Pulse argues that the term should be given its plain and ordinary meaning and not require the circuit board be disposed within the insert body. UDE, in contrast, proposes this construction: "a non-conductive board having a pattern of printed circuitry formed thereon, that is within the insert body." The dispute focuses on whether the printed circuit board is to be disposed within or without the insert body.

The claim language preceding the term to be construed clearly contemplates that the printed circuit board will be disposed within (or at least make up part of) the insert body. It is not to be located outside the insert body. UDE's proposal is narrow enough but unnecessarily re-defines a circuit board. Claim 14 describes the invention as a

connector module comprised of ports and "a plurality of sets of electronic components disposed within one or more insert bodies, the one or more insert bodies further comprising an internal circuit board." Col. 16:20-25. The Court's construction will better assist the jury.

**IT IS SO ORDERED.**

Date: July 30, 2020

_____
HON. ROGER T. BENITEZ
United States District Judge