**REDACTED COPY**
**UNREDACTED COPY FILED UNDER SEAL**

Robert F. Gazdzinski (Bar No. 182090)
rob@gazpat.com
Derek L. Midkiff (Bar No. 299594)
derek.midkiff@gazpat.com
Eric R. Carr (Bar No. 333128)
eric@gazpat.com
**GAZDZINSKI & ASSOCIATES, PC**
16644 West Bernardo Drive, Suite 300
San Diego, CA  92127
Telephone: (858) 675-1670
Facsimile: (858) 675-1674

Kent M. Walker (Bar No. 173700)
kwalker@lewiskohn.com
**Lewis Kohn & Walker LLP**
17085 Via Del Campo
San Diego, CA 92127
Telephone: (858) 436-1333
Facsimile: (858) 436-1349

*Attorneys for Plaintiff*
PULSE ELECTRONICS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PULSE ELECTRONICS, INC., a Delaware corporation. Plaintiff, v. U.D. ELECTRONIC CORP., a Taiwan corporation, Defendant. | CASE NO. 3:18-CV-00373-BEN-DEB<br><br>**PLAINTIFF PULSE ELECTRONIC, INC.'S OPPOSITION TO U.D. ELECTRONIC CORP.'S ATTORNEY FEES MOTION (ECF NO. 184)** |

**REDACTED COPY**
**UNREDACTED COPY FILED UNDER SEAL**

# Table of Contents

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND ................................................................................ 2

III.   LEGAL STANDARD ........................................................................ 4

IV.   ARGUMENT .................................................................................... 6

     A.     Attorney Fees Under 285 Are NOT Warranted ................................... 7

           1.     Pulse Asserted Valid Patent Rights ............................................. 7

           2.     Pulse's infringement claims were reasonable and UDE
                withheld discovery of relevant non-public information. ......... 15

           3.     Nothing Was Exceptional About Pulse's Legal Strategy
                or Pulse's Expert Opinions ...................................................... 18

           4.     Pulse did NOT needlessly multiply the scope of the
                litigation .................................................................................. 22

           *5.*     UDE improperly moves for an undetermined amount of
                fees from another case, *Pulse II* ............................................. 23

           6.     UDE Does Not Provide A Fair Estimate of its Fees ................. 24

     B.     UDE Should Not Be Awarded Expert Fees or Other Costs ............... 25

V.    CONCLUSION .............................................................................. 25

**Table of Authorities**

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111 (C.D. Cal. 2015) ............................................................................................................... 13

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371 (Fed. Cir. 2017). ............. 6

*Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.,* No. 2:14-cv-01918 (C.D. Cal. Apr. 1, 2015) ...................................................................................................... 8

*Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314 (Fed. Cir. 2011) .......................... 14

*Fitbug Ltd. v. Fitbit, Inc.*, 2015 WL 3543116 (N.D. Cal. June 5, 2015) ................... 6

*Fogerty v. Fantasy,* 510 U.S. 517, 114 S.Ct. 1023 L.Ed.2d 455 (1994). ................... 5

*Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*, No. 08-CV-00299(S)(M), 2014 WL 12726568 (W.D.N.Y. July 3, 2014) ...................................................... 20

*Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 131 S. Ct. 2060, 179 L. Ed. 2d 1167 (2011) ..................................................................................................... 8

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371 (Fed. Cir. 2014) .................. 11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369 (Fed. Cir. 2016) .................. 11

Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 572 U.S. 559, 134 S. Ct. 1744, 188 L. Ed. 2d 829 (2014). .................................................................................. 13

*IPS Grp., Inc. v. Duncan Sols., Inc.*, No. 15-CV-1526-CAB (MDD), 2018 WL 2215418 (S.D. Cal. May 14, 2018) ...................................................................... 10

*JS Prods., Inc. v. Kabo Tool Co.*, 2014 WL 7336063 (D. Nev. Dec. 22, 2014) ........ 6

*Largan Precision Co, Ltd v. Genius Elec. Optical Co.*, 86 F. Supp. 3d 1105 (N.D. Cal. 2015). ........................................................................................................... 6

*LendingTree, LLC v. Zillow, Inc.*, 54 F. Supp. 3d 444 (W.D.N.C. 2014) ............... 15

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) .................... 25

*Medtrica Sols. Ltd. v. Cygnus Med. LLC,* No. C12-538RSL, 2014 WL 11906650 (W.D. Wash. July 10, 2014) ............................................................................... 16

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943 (Fed. Cir. 2010) ............................................................................. 4

*Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373 (Fed. Cir. 2020). ................ 5, 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014). ................................................................5

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ...........................24

*Printerton, Inc. v. BreezyPrint Corp.*, 2015 WL 7149442 (S.D. Tex. Nov. 10, 2015)...........................................................................................6

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015)...........................8, 9

*SFP Works, LLC v. Buffalo Armory, LLC*, No. CV 14-13575, 2017 WL 9474212 (E.D. Mich. Apr. 18, 2017), *report and recommendation adopted,* No. 14-13575, 2017 WL 4051564 (E.D. Mich. Sept. 13, 2017).....................................6

*SmartMetric, Inc. v. MasterCard Int'l, Inc.*, No. CV117126MWFAJWX, 2015 WL 12582630 (C.D. Cal. Mar. 25, 2015), *aff'd,* 637 F. App'x 591 (Fed. Cir. 2016) ....5

*SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161 (Fed. Cir. 1991)................................................................................9, 24

*Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175 (Fed. Cir. 2018) ......................................................................................7, 20

*Stragent, LLC v. Intel Corp.*, 2014 WL 6756304 (E.D. Tex. Aug. 6, 2014)..............6

*Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, No. 17CV87-GPC(MDD), 2018 WL 6181479 (S.D. Cal. Nov. 27, 2018) ..................................7

*Whitewater West Industries, Ltd., v. Pacific Surf Designs, Inv.,* No. 317CV01118BENBLM, 2021 WL 1265210 (S.D. Cal. Apr. 5, 2021) ...............24

REDACTED COPY
UNREDACTED COPY FILED UNDER SEAL

Plaintiff Pulse Electronics, Inc. ("Pulse") opposes Defendant U.D. Electronic Corp.'s ("UDE") 35 U.S.C. § 285 ("285") Motion ("Mot.") as follows:

## I.    INTRODUCTION

UDE's attorney argument is unsupported by the facts, case law, and requirements of the extremely high bar set by 285. Pulse invented the technology at issue before UDE, and asserted its valid patent rights after both determining that UDE had utilized Pulse's technology in its ICM products, and attempting to reconcile the matter for several years.

Assertion of infringement of a duly granted patent is presumed to be made based on good faith infringement positions. Pulse exercised its valid patent rights with good faith infringement positions. Attorney fees under 285 are not awarded simply because a plaintiff was not able to prove its case to the Court's satisfaction. Pulse had a Rule 11 basis to file and maintain this litigation.

As this Court noted in its Order, "Defendant is not required to take a license and does not commit infringement <u>so long as it neither knows nor intends that its sale of allegedly infringing ICMs will result in sales of products in the U.S.</u>" (ECF 176 at 14:25-28; emphasis added).   Pulse's assertions against UDE were not "retaliatory," but rather based on Pulse's reasonable belief, based on years of dealings between the two companies, that UDE did in fact know and intend that its sales of its ICMs would result in sales of products in the U.S. (such products from four different companies which Pulse purchased in the U.S.).

Viewing the totality of the circumstances, this case is not exceptional under 285, and no fees should be awarded. UDE does not establish that his case "stands out from others" as required under 285. A careful review of the case law reveals this case was more typical than exceptional. Especially for a case that dealt with nonpublic information.[1]

---

[1] UDE's ICMs are electronic parts used within larger, specialized non-consumer devices. UDE's model numbers within the devices are not publicly available.

## II.     BACKGROUND

In 2015, UDE inquired "Is Pulse open for sale the ICM or all of Pulse?" Ex. K. In 2016, UDE again propositioned Pulse to form "Hybrid Joint Venture of any scale, with a larger focus on North America," for example, "Pulse Group USA." Ex. L. UDE attempted to work with Pulse on a "shared license to approach customers" with "KEY customers" including HPE, Dell, among others. Ex. M at 1-3. UDE's plan was to "advise Juniper that they will have dual sources: UDE and Pulse" where UDE and Pulse "licensed this product together." *Id*. at 2.

UDE did not do business with Pulse or take a license to the patents-in-suit. Instead, UDE made and sold products that infringed Pulse's patents.

On October 14, 2016, Mr. Malherbe of Pulse wrote a letter to Mr. Gary Chen of UDE to stop infringing Pulse's patents. ECF 1-7. On October 27, 2016, Mr. Chen replied to Mr. Malherbe, claiming that prior art invalidated Pulse's patents. ECF 1-8. On February 3, 2017, Mr. Malherbe responded to Mr. Chen with detailed analysis of UDE's infringement, including statements that the prior art was cumulative of prior art considered by the USPTO. ECF 1-9. After continued attempts at resolution, ultimately, on February 18, 2018, Pulse initiated this action.

UDE claims the litigation was meritless yet, in November and December of 2018, UDE filed an *inter partes* review ("IPR") against every patent-in-suit. This Court stayed the litigation (ECF 28) for about one year starting on December 17, 2018. If UDE genuinely thought Pulse had no chance of proving infringement, Pulse respectfully submits that it would not have incurred the expense of four IPRs.

UDE was denied institution on three of four IPRs – UDE merely had to show a **reasonable likelihood** that **a single claim** was unpatentable in any of the '473, '840, or '318 patents, but UDE could not. Also, if Pulse copied UDE's designs as UDE alleges (Mot. 1), then UDE would presumably have won the IPRs by citing its alleged design that predated the patents, which it did not. UDE's allegation of the

1    case being meritless is therefore greatly overstated and ignores the reality of the risk

2    of infringement that it realized it was facing.

3        With the USPTO denying UDE's challenges to Pulse's patents, Pulse

4    continued the litigation when this Court lifted the stay on November 18, 2019 (ECF

5    52). Pulse knew that UDE had more information that Pulse needed to prove its case.

6    After a February 4, 2020 conference with Judge Berg (ECF 64) regarding the issue,

7    this Court agreed with Pulse and Ordered (ECF 66) UDE to produce its customer

8    list so Pulse could conduct third party discovery. UDE produced the customer list

9    on February 19, 2020 and Pulse noted key customers missing from the list.

10       In March, the pandemic hit and all activity by both parties slowed down

11   substantially for several months. After Pulse obtained further documents from

12   UDE's customers, Pulse concluded that UDE was withholding further documents,

13   including thousands of emails relevant to this case. For example, ███ produced

14   over 43,000 documents, thousands of which detailed communications between

15   UDE and ███ regarding the infringing products. Pulse repeatedly asked UDE to be

16   more forthcoming with its discovery obligations to no avail.

17       On May 22, 2020, the parties filed Joint Discovery Motion (ECF 91) to

18   determine if UDE was withholding nonpublic information responsive to Pulse's

19   requests for production (Ex. R) and crucial to Pulse's case. This Court did not find

20   UDE's arguments well taken, including UDE's argument that "customers" are

21   really not "customers." *See, e.g.*, Loudermilk Declaration (ECF 91-14 ¶ 11). This

22   Court agreed with Pulse's position and Ordered (ECF 97 and Ex. N Sealed Order)

23   UDE to produce the requested documents by July 31, 2020 and samples for

24   inspection. Pulse requested to inspect about 150 samples (Ex. S) but UDE only

25   supplied ten (10) samples on September 2, 2020.

26       Despite this Court's previous discovery Order requiring UDE to produce

27   relevant documents, UDE appears to have kept documents or information from

28   Pulse. For example, on October 26, 2020, Pulse received financial information

responsive to a subpoena from ███ that reflected **more than ten times** the amount that UDE previously produced to Pulse via invoices. *See* Ex. B. Also, Pulse was unable to get meaningful testimony from UDE's only 30(b)(6) witness (Mr. Chen) because UDE gave evasive non-answers. With no other remedy from these discovery abuses by UDE, Pulse filed another Joint Discovery Motion (ECF 133) and this Court agreed (ECF 136) that Pulse was entitled to a continued deposition of Mr. Chen.

UDE also alleges that Pulse somehow knew it had no case. However, this is not correct. Pulse obtained and examined (i) samples of UDE ICMs in the U.S. and abroad prior to suit,[2] and (ii) four (4) different switch products from four different U.S. companies (Juniper, Cisco, Allied Telesis and HPE) obtained within the U.S. and containing demonstrated UDE infringing ICMs during the litigation. Pulse disclosed the basis for infringement to UDE via infringement contentions. *See* Ex. C. UDE attempted to refute the allegations, but UDE knew that Pulse had reasonable bases for its claims of infringement.

Pulse performed extensive pre-suit investigation and obtained samples of UDE ICMs (including individually and in end-customer devices sold into the U.S.) indicating that infringing UDE ICMs were making it into the U.S.[3] Considering the totality of the circumstances, this case does not stand out from others, and an exceptional finding under 285 is not warranted.

## III. LEGAL STANDARD

The Federal Circuit explained that there is a "presumption that an assertion of infringement of a duly granted patent is made in good faith." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010).

---

[2] As reflected in the original complaint filed on February 16, 2018 (ECF 1).

[3] *See* Ex. A, Pulse's June 22, 2020 Privilege Log that details extensive research and information on UDE's infringing products. Pulse proposes an in-camera review if the Court wants to view the privileged documents.

"An 'exceptional' case, then, is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 545, 134 S. Ct. 1749, 1751, 188 L. Ed. 2d 816 (2014).

A "district court may award fees **in the rare case** in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness,* 134 S.Ct. at 1757 (emphasis added). Additionally, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* The *Octane Fitness* Court suggested district courts consider several "nonexclusive" factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." 134 S.Ct. at 1756, n. 6 (quoting *Fogerty v. Fantasy,* 510 U.S. 517, 534, n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

Courts do not award attorney's fees as "a penalty for failure to win a patent infringement suit." *Octane Fitness*, 572 U.S. at 548, 134 S.Ct. 1749."The legislative purpose behind [35 U.S.C.] § 285 is to prevent a party from suffering a gross injustice, not to punish a party for losing." *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020). The exceptional standard outlined in *Octane* "presents a **very high bar**." *See SmartMetric, Inc. v. MasterCard Int'l, Inc.*, No. CV117126MWFAJWX, 2015 WL 12582630, at *4 (C.D. Cal. Mar. 25, 2015), *aff'd,* 637 F. App'x 591 (Fed. Cir. 2016) (citing example cases). Moreover, "motivation to implement the statutory patent right by bringing suit based on a

reasonable belief in infringement is not an improper motive." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017).

A review of the case law makes clear that Pulse's arguments did not rise to the level of exceptional under 285.[4]

## IV.   ARGUMENT

This Court stated *Largan Precision Co, Ltd v. Genius Elec. Optical Co.* was "almost factually indistinguishable from the present case." ECF 160 at 54:14-15; 86 F. Supp. 3d 1105, 1107 (N.D. Cal. 2015). In *Largan*, the court granted summary judgment of no direct and indirect infringement.[5] In *Largan*, the plaintiff came up short in proving its case against a Taiwanese defendant where multiple suppliers were used. Here, Pulse did not meet this Court's requirements in proving its case

---

[4] For example, in *Printerton, Inc. v. BreezyPrint Corp.*, 2015 WL 7149442, at *5 (S.D. Tex. Nov. 10, 2015), after finding no infringement and granting the defendant's motion for summary judgment, the court denied the defendant's motion for attorneys' fees. Even though the defendant pointed to "various unsuccessful legal and factual positions" asserted by the plaintiff during the litigation, overall, the plaintiff's claims were not "so exceptionally meritless that they 'descend to the level of frivolous argument or objective unreasonableness.' " *Id.* at *3. Other courts have reached similar conclusions, finding that attorneys' fees are not warranted under § 285 where one side simply advances a losing argument. *See, e.g., Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014) (declining to award attorneys' fees and stressing that "the mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith"); *Fitbug Ltd. v. Fitbit, Inc.*, 2015 WL 3543116, at *4 (N.D. Cal. June 5, 2015) (declining to award attorneys' fees where, considering the totality of the circumstances, "this case neither stands out from others with respect to the substantive strength of a party's litigating position ... or the unreasonable manner in which the case was litigated, nor was it groundless, unreasonable, vexatious, or pursued in bad faith"); denying attorney's fees where Plaintiff presented evidence of *some actual infringement*—albeit on a very limited basis *SFP Works, LLC v. Buffalo Armory, LLC*, No. CV 14-13575, 2017 WL 9474212, at *3 (E.D. Mich. Apr. 18, 2017), *report and recommendation adopted,* No. 14-13575, 2017 WL 4051564 (E.D. Mich. Sept. 13, 2017); *JS Prods., Inc. v. Kabo Tool Co.*, 2014 WL 7336063, at *5 (D. Nev. Dec. 22, 2014) (concluding that it was not "necessarily unreasonable" for the defendant to pursue its infringement claim where, despite the relative weakness of this claim, at least one expert agreed with the defendant's position).

[5] Except for GS–8627 and GS–8615 lenses sold during a limited period.

against Taiwanese UDE where multiple suppliers were used. There was no motion or determination by the court in *Largan* that the case was "exceptional." Likewise, this Court should determine this case was not "exceptional" because the facts similarly do not support it.

Pulse found the accused UDE products in devices it purchased in the U.S., and Pulse analyzed the infringement of the accused products. Pulse had a reasonable basis to conclude direct and indirect infringement in the U.S., especially given the pre-suit communications between Pulse and UDE. Although Pulse was unable in this Court's eyes to survive summary judgment, this case was not "exceptional" under 285. UDE's position that it knew nothing about which of its products end up in the U.S. coupled with Pulse's inability to get third party discovery from UDE's customers (including during the pandemic) led to the Court's decision at the summary judgment stage.

UDE correctly identifies it must prove this case "stands out from others" under *Octane* (Mot. 3) – yet UDE never makes (or supports) the argument for this case. *See generally* Mot. Pulse's conduct during this litigation did not "constitute repetitive egregious conduct that amounts to an 'exceptional' case" as outlined by this Court. *Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, No. 17CV87-GPC(MDD), 2018 WL 6181479, at *5–6 (S.D. Cal. Nov. 27, 2018). Moreover, if UDE believed Pulse's case was meritless it should not have waited until after summary judgment to first raise the "exceptional" issue. *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1181 (Fed. Cir. 2018) (explaining that a "party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its 'parade of horribles' after all is said and done."). The standard for an "exceptional" case finding is too high of a bar, and UDE's Motion should be denied.

**A.    Attorney Fees Under 285 Are NOT Warranted**

**1.    Pulse Asserted Valid Patent Rights**

Under 285, fees are not warranted when a plaintiff asserts valid patent rights with a good faith basis for a defendant's infringement. Pulse asserted valid patent rights with a good faith basis for UDE's infringement. UDE's mischaracterization of this case as "an anticompetitive scheme" rings hollow under 285.

UDE cites *Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.* to argue this case is exceptional under 285. Mot. 20:18-25; No. 2:14-cv-01918, 4 (C.D. Cal. Apr. 1, 2015) (ECF No. 61). In *Dzinesquare*, the plaintiff did not oppose defendant's claims that its infringement contentions were objectively baseless and admitted the patent was invalid. *Id*. Here, the patents are valid and Pulse vehemently opposes UDE's argument that Pulse's reasonable infringement positions were frivolous or objectively unreasonable - UDE has further presented no evidence to support its position. *Munchkin,* 960 F.3d at 1375. Pulse did its best to gather information from UDE's customers to support Pulse's infringement claims at trial, including subpoenas of twelve (12) different parties and multiple successful motions to this Court to compel UDE to produce. UDE's strategy to take the position that it had no knowledge of the sales of its accused products in the U.S. (despite direct dealings with such customers) and to avoid any indication otherwise worked for its summary judgment motion, but Pulse maintains that UDE was at very least willfully blind to its inducement (*see Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 767, 131 S. Ct. 2060, 2069, 179 L. Ed. 2d 1167 (2011)), and in fact knew that some of its ICM products were being sold in the U.S.

UDE also quotes *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350, 1352 (Fed. Cir. 2015). Mot. 22:2-3. UDE conveniently leaves off the very next sentence of its quote from *SFA*, that is: "The problem with Newegg's request that we reverse the district court's exceptional case determination on these grounds, however, <u>is its failure to make a record supporting its characterization of SFA's improper motivations</u>." (emphasis added) UDE has failed to make a record supporting any improper motivations by Pulse. Suing a competitor with valid patents and good

faith infringement positions based on extensive pre-filing and post-filing investigation is not exceptional. Just as the district court and Federal Circuit in *SFA* decided "SFA's litigating position and the manner in which it litigated this case did not stand out", this Court should similarly find Pulse's litigating position and manner in which it litigated this case did not stand out. *See SFA Sys., LLC*, 793 F.3d at 1350; *see also Genentech, Inc. v. Eli Lilly & Co.*, No. 18-CV-1518 JLS (JLB), 2021 WL 1102425, at *9 (S.D. Cal. Mar. 23, 2021) (this Court finding no improper motive because patents were valid).

### a)   **Pulse Competed Fairly**

As a patent holder, Pulse sought a reasonable royalty from UDE. *See SmithKline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1163-1164 (Fed. Cir. 1991) ("patentee is entitled to a reasonable royalty"). Pulse maintains that many of UDE's products are blatant copies of Pulse technology; see e.g., the example UDE "G" Series ICM product (⬛⬛⬛⬛⬛) below vs. FIG. 1c of Pulse's U.S. Patent No. 7,959,473 (colored lines indicate common components).



Many of the internal Pulse emails cited in UDE's Motion highlight the interplay between Pulse's patents and UDE's "below market" pricing strategy. For example, ███████████████████████████████████████████████████ ██████████████████████████████ (Mot. at Ex. 1, PEI0005116) and "████████████ ████████████" (Mot. at Ex. 2, PEI0004879). Combating such pricing tactics with valid patents is not "exceptional."[6]

After extensive pre-suit investigation (including discussions with common Pulse and UDE customers), and with the aid of legal counsel, Mr. Malherbe and Pulse formed a good faith belief that UDE infringed various patents owned by Pulse. Gazdzinski Declaration ("G Decl.") ¶21. Asserting valid patent rights with a good faith belief of infringement is not "exceptional" under 285.

UDE complains of "three years" of litigation (Mot. 1:5, 11:3, 13:16, 22:26), when in fact (i) roughly one year of that was due to UDE's ineffectual IPR filings, and (ii) a substantive portion of the remainder was due to UDE's delay in providing meaningful discovery. Court Orders at Ex. N, ECF 97, ECF 136; *see also* Ex. E.

b) **Summary Judgment Does Not Give Rise to Exceptionality**

This Court has found the "mere fact that the Court ultimately granted [Defendant] Duncan's motion for summary judgment is not enough" to merit an exceptional case finding. *IPS Grp., Inc. v. Duncan Sols., Inc.*, No. 15-CV-1526-CAB (MDD), 2018 WL 2215418, at *3 (S.D. Cal. May 14, 2018). As detailed in Pulse's Response to this Court's *sua sponte* Order to show cause, UDE testified that it sends product to the U.S. and Pulse provided invoices with U.S. "Ship to" and "Bill to" addresses. UDE wrongly alleges that "Pulse *absolutely* knew that UDE would not be a direct infringer" **yet provides no citation to the record whatsoever.** Mot. 9.

---

[6] Despite UDE's arguments, the pricing of the accused products underlying the lawsuit is otherwise irrelevant in a 285 analysis.

Firstly, UDE itself admits in its Motion that Pulse obtained samples in the U.S. – "While Pulse obtained a large number of UDE samples, the **majority** of those appear to have been obtained by Pulse outside the U.S." Mot. 10 (emphasis added). UDE cannot reconcile its assertions above and the fact that UDE otherwise admits that some of the "large number" of samples came from the U.S. (thereby being indicative of a basis for direct infringement).

Further, UDE omits important details from *Halo I*. Mot. 9. *Halo I* was an unrelated case that UDE was not a party to. In *Halo I*, Pulse went to trial and lost on direct and indirect infringement. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1375 (Fed. Cir. 2016) ("The jury found that: (1) Pulse directly infringed"). Similarly here, Pulse reasonably believed that UDE directly infringed. Moreover, the relevant holding was limited to "offer to sell" not all provisions of 271(a). *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1381 (Fed. Cir. 2014) ("Pulse did not directly infringe the Halo patents under the 'offer to sell' provision").

Here, Pulse presented evidence in this litigation of direct infringement that included (i) UDE's own presentation showing 40% of sales of all of its products in the U.S., (ii) UDE's testimony admitting accused product was shipped into the U.S., (iii) 105 UDE invoices with "Bill to" and/or "Ship to" the U.S., (iv) UDE's ICM samples sent to the U.S. for testing and/or this litigation (as admitted by UDE as noted *supra*), (v) UDE's website with a U.S. office address, a U.S. sales representative, and U.S. distribution/agents, (vi) UDE's joint ICM enterprise with U.S.-based ████, (vii) four (4) end-customer devices purchased in the U.S. containing infringing UDE ICMs, and (viii) UDE's competition for ICM designs in the U.S. *See generally* ECF No. 172.

Interestingly, UDE cites to its own Declaration from Mr. Loudermilk (ECF 74-6) that Judge Berg determined was *questionable* when this Court Ordered UDE to produce the documents it was withholding. *See* Ex. N at 43 ("████████████████████████████████"). Moreover, Pulse proved the Loudermilk

Declaration was incomplete or evasive when Pulse received documents from its subpoenas to UDE's customers. *See, e.g.,* Ex. O (extensive communication directly between end customer and UDE). [7]

UDE argues Pulse "never cared about ever prevailing on its claims" by claiming that the *majority* of pre-suit samples obtained by Pulse were not in the U.S. *See* Mot. 10:8 - 11:4. Pre-suit, Pulse attempted to get samples wherever feasible, including in the U.S. and abroad, because the infringing products are not sold separately, but rather are sold within larger specialized end-customer devices such as high-end switches and routers (two of which Pulse ultimately purchased in the U.S. for approximately $15,000.00 USD). G Decl. at ¶22. There is no definite way to identify all end customer devices that contain UDE's infringing parts short of buying them all. *Id*. at ¶23.  Even if Pulse had access to the many different switch devices on the U.S. market, one simply cannot look at the exterior of such devices to conclusively determine if UDE made the ICMs therein. *Id*. at ¶24. The devices must be purchased and opened up (in many cases destructively), forcing Pulse into a difficult search for expensive (typically $7K and up each) devices. *Id*. at ¶25. The fact that **four** devices purchased by Pulse (in the U.S.) based on its investigation (i.e., made by Allied Telesis, Juniper, Cisco, HPE) each had accused UDE ICMs is telling. *Id*. at ¶26. UDE claims it has no knowledge of where each of its specific parts end up, but its infringing parts were demonstrated by Pulse via actual purchases to be present in the U.S. devices of four (4) separate U.S.-based manufacturers, several of which UDE personnel had direct communication for e.g., design issues, pricing, and similar as shown by discovery conducted on these companies. *Id*. at ¶27. Instead, UDE avoided reasonable discovery requests from

---

[7] UDE wrongly alleges the Complaint only contained direct infringement allegations for three of the four asserted patents. Mot. 10:3-10. Not so. Each of Pulse's initial, first amended, and second amended claims contain allegations of direct infringement for all patents contained therein. The Second Amended complaint only contains three (3) patents since the '302 was removed; all remaining patents have explicit assertions of direct infringement.

Pulse which would have aided Pulse in identifying the aforementioned devices, including calling its customers "not customers" to try to throw Pulse off the trail.

Moreover, pre-suit, Pulse (Mr. Malherbe and Pulse sales personnel) informed its counsel of discussions with its customers regarding UDE ICM product being used in various devices being sold into the U.S., confirming that such activities were taking place. *Id.* at ¶28.

UDE wants to correct this Court's previous discovery motion orders, which UDE lost fair and square based on its discovery tactics. Mot. 11:5-26. The record shows that Pulse was successful throughout the litigation, up and until the recent summary judgment decisions.

> Merely losing at summary judgment is not a basis for an exceptional case finding. If so, every party prevailing on summary judgment would be entitled to attorney fees—a result inconsistent with the Supreme Court's holding that an exceptional case "stands out from others," *see Octane Fitness,* 134 S.Ct. at 1756, and one that would have negative implications for access to justice. …
> Cambrian's arguments on these issues, while unpersuasive, were not so meritless as to "stand out from others" commonly encountered in patent cases.

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1114–15 (C.D. Cal. 2015).

Although this Court was not persuaded by Pulse's summary judgment arguments, Pulse's arguments were far from exceptional. To contrast this case from that of an exceptional case, see the decision in *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, in relevant part:

> The District Court …. found that Allcare had "pursued this suit as part of a bigger plan to identify companies potentially infringing the ′105 patent under the guise of an informational survey, and then to force those companies to purchase a license of the ′105 patent under threat of litigation." *Id.,* at 736–737. And it found that Allcare had "maintained infringement claims [against Highmark] well after such claims had been shown by its own experts to be without merit" and had "asserted defenses it and its attorneys knew to be frivolous." *Id.,* at 737.

572 U.S. 559, 561–62, 134 S. Ct. 1744, 1747, 188 L. Ed. 2d 829 (2014).

This case exhibits none of the exceptional actions outlined above. Pulse sued a competitor after <u>years</u> of trying to work out a deal - a common storyline in patent cases. This case does not stand out under 285.

UDE further attempts to paint Pulse as somehow exhibiting a "pattern of litigation abuses" (Mot. 21), based on its sole other assertion of the '302 patent (previously in the same suit) against UDE after the amended claims were deemed patentable by the PTAB decision. Notably, this Court in its decision on the '302 case indicated clearly that Pulse could refile its action.[8] Ex. P at 27. In its entire 50-year history, Pulse filed two cases against UDE in total: (i) the present case, and (ii) the second case (*Pulse II*) which this Court said can be refiled upon issuance of the certificate by the Director. Hardly a pattern of litigation abuse.

Pulse also notes that *Halo I*, which UDE is so apt to cite, was filed *against* Pulse by Halo, not by Pulse. Pulse is far from a "serial litigator."

c)  **Pulse's Most Recent Settlement Offer**

Pulse's most recent settlement offer considered the limited information provided by UDE. Moreover, the $162K from Pulse's damages expert could be trebled (i.e., $486K), upon a finding of willful infringement. Pulse continues to believe that UDE never fully disclosed its sales. *See* Ex. E (email exchange regarding missing financials blamed on inexplicable "███" issue); *see also* Exs. C and D (more than 100 "G" Series models uncovered from third party discovery).

Pulse's latest settlement offer was realistic in view of the circumstances. *Id.* at ¶29. It was certainly not a nuisance value settlement the Federal Circuit has cautioned against. *See, e.g., Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1327 (Fed. Cir. 2011). Pulse's settlement offer and pursuit of infringement claims against UDE was not exceptional.

---

[8] "However, Plaintiff may re-file its complaint once the Director issues the certificate providing Plaintiff exclusion rights as to claims 18, 19, 22, and 23, provided the 302 Patent claims have not expired by that time."

1   Moreover, what UDE blatantly omits from its motion is that the royalty rate
2   offered by UDE was <u>well below industry standard</u>, (*See* Ex. F, licenses) especially
3   because Pulse had already expended great sums developing its technology.

4   Similarly, Pulse's refusal of UDE's settlement offers does not warrant an
5   exceptional case finding under 285. In *LendingTree, LLC v. Zillow, Inc.*, the court
6   found patentee's pursuit of its infringement claims against a competitor was not so
7   frivolous or groundless as to justify an award of attorney fees to the competitor as a
8   prevailing party in the patent infringement action, even though the patentee
9   continued to litigate and refused settlement offers after the court's claim
10  construction substantially limited the scope of patent terms. 54 F. Supp. 3d 444,
11  459 (W.D.N.C. 2014). Here, Pulse (i) prevailed against UDE's opposition to lift the
12  stay; (ii) prevailed on two different discovery disputes; (iii) prevailed against
13  UDE's motion to dismiss the first amended complaint, and (iv) prevailed at
14  *Markman*. Pulse also had every reasonable belief that it would prevail on its
15  infringement and validity positions at trial.

16  **d)  Pulse's Act of Suing UDE But Not Its Customers**

17  Whether a plaintiff decides to sue the infringing supplier, or the end
18  customers supplied by the infringing supplier, plays no role in a 285 analysis. Pulse
19  asserted its valid patent rights against UDE with reasonable infringement positions.
20  UDE's attempted spin on Pulse's recent briefing is not accurate. *See* Mot. 13:6-14.

21  If Pulse could recoup its damages from a single infringing supplier (i.e.,
22  UDE), Pulse could avoid filing multiple lawsuits, including against customers
23  shared by Pulse and UDE.  Pulse's customers were unfortunately unwilling victims
24  of UDE.  It is UDE who should be reasonably responsible for its accused products.

25  Moreover, UDE cites no authority that Pulse must somehow sue multiple of
26  its customers versus (more efficiently) suing the source of the infringing activity.

27  **2.  Pulse's infringement claims were reasonable and UDE withheld discovery of relevant non-public information.**
28

UDE's citation to the 285 discussion in *Medtrica Sols. Ltd. v. Cygnus Med. LLC* highlights how far this case is from exceptional. Mot. 13:19; No. C12-538RSL, 2014 WL 11906650, at *2 (W.D. Wash. July 10, 2014). In *Medtrica*, "the only evidence Cygnus submitted to support its claims were excerpts from websites." *Id*. Here, Pulse had much more than excerpts from websites. Pulse had (i) the physical infringing devices (both individual ICM samples obtained pre-suit, and four (4) separate third-party switch products with confirmed infringing UDE ICM purchased in the U.S. and manufactured by U.S companies Allied Telesis, HPE, Juniper and Cisco during the course of the litigation), (ii) discovery from UDE indicating collaboration with the foregoing U.S. companies and ██████ to sell its ICMs, (iii) discovery from UDE's customers, (iv) discovery from EMS companies used by UDE, (v) expert opinions, and (vi) email communications between Pulse and UDE regarding UDE's desire to purchase Pulse or enter some other joint arrangement.

First, UDE argues that Pulse did not obtain evidence of UDE's products arriving in the U.S. Mot. 13:28-14:2. UDE repeats its *Halo I* argument already discussed by Pulse above. Mot. 14:2-4. *Halo I* was limited to "offer to sell" under § 271(a). Notwithstanding the different evidence and facts in the two cases, most of the damages in this case were based on inducement under § 271(b).

Second, Pulse did not refuse (Mot. 14:4-7) to enter a joint stipulation for the N Series and S Series products; this is a factual misrepresentation plain and simple. UDE would not agree to Pulse's representative N Series and Series products, after multiple attempts by Pulse to find common ground with UDE for a joint stipulation.

Third, contrary to the clear factual errors asserted UDE's counsel, **Pulse purchased not one but two actual infringing UDE G Series multigig products in the U.S.**, namely in the form of:

(i) the Cisco Meraki switch containing a UDE GMC-AT-0001 (1921paa)-multigig ICM, and an infringing ('302 Patent) 1G ICM sitting next to it on the motherboard;



Ex. G; G Decl. ¶8 (Pictures of the Cisco Switch Model No. MS355 purchased in the U.S. in August, 2020, with infringing UDE GMC-AT-0001 ICM).

and (ii) the Juniper EX-4300-48MP switch containing an ▮▮▮▮-branded ICM (AQX-N3S64-MTN-U31) manufactured by UDE for ▮▮▮▮ (UDE Part No. ▮▮▮▮).

Ex. H; G Decl. ¶ 9(Picture of the Juniper EX4300-48MP purchased in the U.S. in March 2020, with infringing UDE ▮▮▮▮ ICM (branded as ▮▮▮▮ AQX-N3S64-MTN-U31)) Ex. I; G Decl. ¶10.

UDE asserts that "Those photos showed that it was not a UDE ICM, but an ICM of third party ▮▮▮▮ (ECF 172 at 23), which Pulse never successfully correlated back to UDE (March 31 Order at 49)." Mot. 15.    This is an erroneous and misleading statement by UDE. The chart above shows the **unequivocal correlation made by UDE's Mr. Loudermilk himself between an AQX-N3S64-MTN-U31 as found in the purchased Juniper device, and a specific UDE multigig part number (GM6-AQ-0005)**.

Moreover, Pulse's deposition of ▮▮▮▮ proves that (i) ICM products with AQX- part numbers were purchased by ▮▮▮▮ from UDE, (ii) UDE was the source of the multigig ICMs provided to ▮▮▮▮, and (iii) Juniper was the primary customer of these multigigabit ICM parts.

[Ex. Q 17:2-8 (emphasis added)] Q. And when you say "█████████████████████ ████" can you explain?

A. ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████

[Ex. Q 14:3-14 (emphasis added)]

Q. ██████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████

Even without the aforementioned evidence, UDE also fails to note that it stipulated that all G-Series were representative (ECF 124); i.e., the ████████████ shown above in the Juniper U.S. switch product was in fact representative.

### 3.   Nothing Was Exceptional About Pulse's Legal Strategy or Pulse's Expert Opinions

UDE has no support for a 285 finding on this record and no explicit argument that this case "stands out" as required by 285.

#### a)   Pulse's SAC Was Proper

Counsel for Pulse purchased the Juniper EX4300-48MP and, after examination of discovery materials from ████, █████████, and ██████, determined a UDE ICM was inside. Although ██████ produced the email that cross-references UDE's ███████████ ICM with ██████'s AQX-N3S64-MTN-U31 in April of 2020, G Decl. ¶ 10; ████ 31796-8, Pulse was unable to confirm that the part in the purchased Juniper switch was in fact made by UDE until all three of the following had occurred: (1) ████████ produced documents responsive to the subpoena on October 22, 2020. G Decl. ¶30; (2) ████████'s August 21, 2020 production of documents. Id. at ¶31; and (3) ████████'s **December 18, 2020** testimony. Id. at ¶32; Ex. Q. Pulse purchased the EX4300-48MP in March of 2020. Pulse initially conducted a brief visual inspection of the interior of the device shortly thereafter to

identify that ███████-branded ICMs were in fact present inside.  However, Pulse took no photographs at that time, since Pulse had no unequivocal data (as it did many months later after obtaining discovery from ███████ and ███████) that the ███-branded device actually contained a UDE ICM versus e.g., that of another supplier.   As noted by ███████ itself *supra*, UDE purposely changes the name/branding on the device for its customer ███████.  **There are no visible markings of any kind on the device to indicate that UDE manufactured it**, other than the port markings (e.g., "A", "B", "C", etc.) which Pulse was informed were commonly used by UDE in many UDE products (and as evidenced by the many UDE multigigabit ICM pdfs obtained from UDE's website), and which Pulse described in detail in its SAC.  Based on the deposition of ███████ on Dec. 18, 2020, ███████ had purchased ICMs from other companies. Had Pulse made the "leap of faith" and asserted that the ███████-branded AQX-N3S64 device shown above was known to be a UDE device without proof, that would have been a misrepresentation to this Court. Only after sufficient documents and testimony were obtained could the correlation be made definitively (shown above), and it was only at that time (December 2018, as noted *supra*) Pulse could say with confidence that the ███-branded part was in fact a UDE part.

Contrast the Cisco Meraki switch obtained by Pulse in late August 2020 discussed *supra*, wherein there is no question that a UDE ICM is used based on UDE (not ███████) markings and UDE (not ███████) part number plainly evident thereon. Rather than "oversell" its facts, Pulse went to lengths to accurately reflect the current state of its evidence regarding the EX-4300 switch – i.e., that Pulse had purchased one, and it believed based on port markings that the underlying ICMs were manufactured by UDE (which was ultimately proven correct).

Further, UDE alleges a lack of production for certain materials by Pulse. However, Pulse only took its first photos of the ███████-branded ICMs inside the

Juniper device in late December 2020.[9]  UDE did not request a physical inspection of the Juniper device from Pulse (as Pulse did from UDE for the UDE product specimens). UDE was clearly aware in July 2020 that Pulse had purchased the Juniper switch; see ECF 106, page 32, Par. 96.[10]  UDE also did not ask for photographs of the device. If UDE had any question as to the veracity of Pulse's claims, it reasonably should have requested such inspection/photos. Instead, UDE waited until after-the-fact to raise wholly unsubstantiated claims. *Stone Basket*, 892 F.3d at 1181. If UDE did have such suspicions, then they knowingly avoided raising the issue until after the dismissal. (Mot. 15:17-19). Courts have considered conduct of the movant when deciding whether a case is exceptional. *See, e.g., Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*, No. 08-CV-00299(S)(M), 2014 WL 12726568, at *2–3 (W.D.N.Y. July 3, 2014) (finding Defendant "does not have 'clean hands' sufficient to render this an 'exceptional case' "). UDE does not have "clean hands" sufficient to render this an "exceptional" case, because UDE itself either had no such suspicions or "hid the ball" on them until its 285 motion.

Pulse did not photograph the interior of the Juniper EX4300-48MP until after discovery closed. Accordingly, Pulse could not respond to UDE's related RFP or Interrogatory (Mot. 15:21-24) with the additional information it did not have, and it has no duty to create such materials.

As to samples (Mot. 15:27-16:3), the samples UDE gave to Pulse in the U.S. are at a minimum, circumstantial evidence of direct infringement. ECF 172 at 16:1-14. UDE mischaracterized the webpages used as exhibits. Mot. 16:3-9. The

---

[9] Note that as another factual error proffered by UDE, Pulse's relevant materials were provided to UDE on **Jan.1, 2021**, versus Dec. 30, 2020 as asserted by UDE at Mot. 15 and in Mr. Canavera's declaration.

[10] UDE also claims Pulse was obligated to disclose a Cisco switch on June 22, 2020; yet that switch was not purchased by Pulse until August of 2020. Mot. 16:11-16; G Decl. ¶8.

webpages from third parties were used to show that the devices, with infringing UDE ICMs, could be purchased in the U.S.

### b) Pulse's Expert Opinions Do Not Make the Case Exceptional

With no supporting case law, UDE wants the Court to find the case exceptional based on the opinions of Pulse's experts. Mr. Baxter's report was not a sham as UDE claims (Mot. 17:7-22).  First of all, based on extensive background and qualifications, Mr. Baxter applied well established rules for infringement analysis, including comparing the claims to the accused products as construed by a person of ordinary skill in the art. (ECF 144-8 at ¶¶ 8-18, 28-31) He analyzed the sample products that Pulse's counsel believed were representative at the time. UDE only decided to agree to a representative product for the G Series ICMs after numerous rounds of back-and-forth between UDE and Pulse counsel, leaving Mr. Baxter little time to analyze additional product before his report was due on November 10, 2020.

UDE takes issue with Mr. Baxter's opinions given Mr. Baxter's testimony that he "had no independent verification" and that he had not found a single product in the U.S. Mot. 17:7-21. Experts are entitled to rely on facts or data which they have been made aware. *See* Fed. R. Evid. 703. Experts may rely on experience. *See* Fed. R. Evid. 702. Mr. Baxter relied on facts regarding products in the U.S. containing accused products and his experience to opine that UDE, who sells millions of dollars of ICMs to U.S.-based companies such as ███ and ███, would infringe in the U.S. Further, Mr. Baxter admitted he was "not a lawyer" and did "not intend to testify about legal issues." (ECF 144-8 at ¶ 32)

UDE also claims that Mr.[11] Cobb's damages report was a sham. Mot. 17:23 – 18:5. However, UDE also claims it could not identify the amount of sales of accused product in the U.S.  Mr. Cobb's damages report (ECF 150-24, Pulse's MSJ

---

[11] Mr. Cobb is not a Doctor. Mot. 18:2.

Opp. at Ex. 21) provided extensive analysis across numerous factors to support his 30% opinion.  This includes UDE's own "Company Profile" stating that <u>40% of UDE's sales are in the U.S.</u> Pulse's MSJ Opp., Ex. 17 at UDE0092346 (showing 40% of sales in "US"). This includes numerous other factors, e.g., sales of comparable products, [list].

Yet further, a similar 30% opinion was not excluded by another U.S. district court in a case where Pulse was a party. Ex. J. Mr. Cobb's 30% opinion does not stand out because it was supported by the facts of this other case, and hence far from exceptional.

### 4.    Pulse did NOT needlessly multiply the scope of the litigation

Under 285, Pulse did not expand the scope of the litigation in a way that makes the case exceptional.

#### a)    New claims of the '318 patent came from newly discovered evidence

Pulse amended its infringement contentions after inspecting roughly ten (10) new ICM samples provided by UDE on September 2, 2020. After reviewing in detail hundreds of photos taken during the inspection, Pulse correlated the newly identified products to claims of the '318 patent.  After the amendments to the infringement contentions were made, Pulse's counsel called Judge Benitez's chambers to get a hearing date for a motion for leave to amend the infringement contentions based on the newly discovered evidence, in accordance with the Local Rules. Chambers for Judge Benitez informed Pulse that no such motions would be heard. Pulse served the amended infringement contentions not out of bad faith but as a practical matter and to preserve the issue on appeal.

This District is clear: "Parties accordingly need not 'prove up' their theories by providing evidence beyond the material they have at the time they make their contentions." *Ameranth, Inc. v. Pizza Hut, Inc*., No. 12CV1627 JLS NLS, 2013 WL 3894880, at *2 (S.D. Cal. July 26, 2013) (citations omitted).  Pulse only acquired

information regarding the newly produced products in early September 2020; hence it could not have included it in its prior round of contentions.

b)  **GX-X Series**

Before this case was filed, Pulse confirmed the infringement of a "GM-41000VJ84-1" ICM, a GX-X Series ICM. Pulse also analyzed data sheets for the "GM-80000" and "GM-40000" Series ICMs, one of which is available on a UDE website as well as that of a European (German) ICM distributor Ceviconn (https://sites.google.com/a/ceviconn.com/ceviconn-de/engl/rj45-connectors/integrated-rj45-connector-2-5g-5g-10g). So, these products exist and appeared to be actively marketed.  UDE claims to never have sold them despite also having English-language data sheets for GX-X Series ICMs. Liability for "use" under § 271(a) was possible. *See Roche Prods., Inc. v. Bolar Pharm. Co.*, 733 F.2d 858, 861 (Fed. Cir. 1984) ("Section 271(a) prohibits, on its face, any and all uses of a patented invention.") Pulse chose to maintain its reasonable infringement position of the GX-X Series. This was prudent, not exceptional.[12]

5.  **UDE improperly moves for an undetermined amount of fees from another case, *Pulse II***

If UDE wants to move for attorney fees in *Pulse II*, then UDE should file a motion in *Pulse II*, not this case. This Court considered this very issue:

> Defendants do not cite any authority for the proposition that unreasonable litigation in a previous case may serve to make a later case exceptional under *Octane Fitness.* Other courts addressing similar arguments have, in fact, reached the opposite conclusion. ... The Court agrees that these cases correctly interpret *Octane Fitness.* A district court's consideration of a party's "unreasonable" conduct is limited to the case at bar. *See Octane Fitness*, 572 U.S. at 554.

*Whitewater West Industries, Ltd., v. Pacific Surf Designs, Inv.,* No. 317CV01118BENBLM, 2021 WL 1265210, at *5 (S.D. Cal. Apr. 5, 2021).

---

[12] UDE went so far as to allege that Pulse stole the sample it obtained from UDE, citing only its own self-serving declaration.  (ECF 144-1 at 4:7) Pulse validly obtained the sample in question.

This Court found that an exceptional determination is limited to the case at bar. *Id*. Thus, UDE's argument regarding *Pulse II* should not be considered in the totality of the circumstances.

Moreover, Pulse was not trying to pressure UDE into "paying a worldwide tax," as falsely alleged by UDE. Pulse was merely seeking the reasonable royalty to which it is entitled. *SmithKline*, 926 F.2d at 1164 ("patentee is entitled to a reasonable royalty"). Pulse had a good faith and reasonable belief, based on years of dealings with UDE (including attempts by UDE to purchase Pulse), that UDE was well aware of where its ICMs ultimately ended up.

### 6.    UDE Does Not Provide A Fair Estimate of its Fees

UDE alleges entitlement to a broad award of attorney fees but fails to "provide a fair estimate" of the amount of fees sought. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 676 (9th Cir. 2017) (finding an "amorphous request is inadequate under Rule 54(d)(2)(B)(iii), which at minimum requires a party to 'provide a fair estimate' of the amount of fees sought").

UDE's unbounded estimate of "over $1.6M" is supported by nothing more than a declaration by its attorney. *See* "over $1.6M on direct defense of the present lawsuit" Mot. 22:11-12; Canavera Decl. at ¶ 6 ("no less than $1,600,000"). The declaration appears to deduct the fees from one of the IPRs. *Id*. If UDE is seeking fees for the entire litigation, why is UDE not seeking fees incurred by the IPRs? UDE also confusingly alleges other distinctly different amounts in its Motion. *See* "approximately $1M of attorney fees" Mot. 11:24-25; "> $1.5M in attorney fees carried by UDE." Mot. 22:28; 23:2.

Assuming UDE is seeking $1.6M in attorney fees, this amount is not a fair estimate. It was not a particularly active case – two discovery motions, a handful of depositions. UDE took no depositions other than of Pulse's two experts. This case had little to no work performed for more than half of its pendency (the 11 months it was stayed for IPRs and other gaps occurred in the early stages of the litigation).

There was a pandemic during most of the remainder of the time the action was pending.  It is impossible to know how much fees UDE spent on what and when, what the rates were, how many attorneys were involved, whether the work done was relevant and reasonable in the circumstances.

No bifurcation is necessary because Pulse is not liable for fees under 285 and UDE failed to provide a fair estimate of its fees. As explained above, UDE's motion contains an unbounded amount of fees that is no less than $1.5M, this unbounded amount is an inadequate "fair estimate" under Rule 54(d)(2)(B)(iii) and should be denied. *See Perfect 10*, 847 F.3d at 676.

### B.    UDE Should Not Be Awarded Expert Fees or Other Costs

This is not the type of case where expert fees are recoverable. UDE cites to *MarcTec, LLC v. Johnson & Johnson*, to argue that Pulse should pay $178,000 in expert fees. Mot. 24:19-25; 644 F.3d 907 (Fed. Cir. 2012). Pulse's expert testimony was not the type of unreliable or irrelevant testimony that triggers fee shifting. In *MarcTec*, the court awarded fees because the plaintiff engaged in bad faith infringement positions that had no basis. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d at 921–22 (MarcTec "pressed forward after receiving documentary evidence that refuted its allegations … its experts proffer junk science, including a bogus theory about supposed temperature changes that were not capable of being detected and an unrealistic test having no relation to the accused product.") Here, Pulse did not receive documentary evidence that refuted Pulse's infringement allegations from UDE. Further, Pulse engaged two highly qualified and experienced experts that did not proffer junk science or unrelated theories.

### V.    CONCLUSION

This case is not exceptional and UDE's Motion should be denied.

1

2    DATED: May 3, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**GAZDZINSKI & ASSOCIATES P.C.**

By: */s/ Robert F. Gazdzinski*
     Robert F. Gazdzinski
     Derek L. Midkiff
     Eric R. Carr

**Lewis Kohn & Walker LLP**

    Kent M. Walker

Attorneys for Plaintiff
PULSE ELECTRONICS, INC.